# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SENECA ADAMS, et al., ) | |
| ) | 06 CV 4856 |
| Plaintiffs, ) | |
| ) | No. 06 CV 4856 |
| v. ) | |
| ) | Hon. Charles R. Norgle |
| CITY OF CHICAGO, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court is Defendant City of Chicago's (the "City") Motion to Bifurcate § 1983 Claims Against It and To Stay Trial on Those Claims. Also before the Court is the City's motion to supplement its aforementioned motion, which is granted. For the following reasons, the motion to bifurcate is granted.

### I. BACKGROUND

Plaintiffs Seneca Adams, Tari Adams, and Sicara Adams (collectively, "Plaintiffs") filed their Fourth Amended Complaint against the City and former and current Chicago Police Officers Margaret Hopkins, Timothy McKeon, Matthew Riley, John Dahlberg, Jennifer O'Shaugnessy, Keith Herrera, John Hurley, and unknown Chicago Police Officers (collectively, "Defendant Officers") on June 14, 2011. Plaintiffs' claims arise out of an incident that occurred on September 14, 2004, between Plaintiffs and Defendant Officers who were members of the Special Operations Section ("SOS") of the Chicago Police Department. The facts of this case have been well documented over the course of the six years that it and similar cases involving the SOS

have been pending before this Court and others in the district. See Fourth Am. Compl. ¶¶ 6-68 (providing an extensive factual basis for Plaintiffs' claims).

Plaintiffs' complaint contains seven claims against Defendant Officers pursuant to 42 U.S.C. § 1983 (excessive force, false arrest, unlawful seizure, due process, equal protection, failure to intervene, and conspiracy to deprive of constitutional rights), a § 1983 claim pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978) against the City, and three Illinois state law claims (indemnification, malicious prosecution, and intentional infliction of emotional distress). The City now asks this Court to bifurcate the Monell claim against it, and stay both expert discovery and trial on that claim. The motion is fully briefed and before the Court.

## II.     DISCUSSION

### A. Standard of Decision

Pursuant to Federal Rule of Civil Procedure 42, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "Only one of these criteria need be satisfied for a court to order a separate trial." Treece v. Hochstetler, 213 F.3d 360, 365 (7th Cir. 2000) (quoting Berry v. DeLoney, 28 F.3d 604, 610 (7th Cir. 1994)). "The district court has considerable discretion to order the bifurcation of a trial." Treece, 213 F.3d at 364-65.

### B. Defendant City of Chicago's Motion to Bifurcate § 1983 Claims Against It and Stay Discovery and Trial on Those Claims

The City advances four arguments in support of its motion: (1) "[a] significant number of courts in this district have granted similar motions for bifurcation," Def.'s Mot. to Bifurcate 7; (2) "[b]ifurcation best serves the interests of litigation and judicial

2

economy," id. at 3; (3) "[b]ifurcation can help prevent undue prejudice" to Defendant Officers, id. at 4; and (4) "[b]ifurcation will not affect plaintiffs' recovery of any compensatory damages to which they may be entitled," id. at 6.

### 1. *Similar Motions Frequently Granted in This District*

To support its argument that bifurcation "promotes sufficient efficiency and economy of discovery and litigation," the City cites a number of cases in which courts have granted motions for bifurcation of Monell claims. Def.'s Mot. to Bifurcate 8. In response, Plaintiffs cite a similar number of cases wherein courts denied motions for bifurcation of Monell claims. Pls.' Resp. to the City's Mot. for Bifurcation & "Stipulation" 6 n.5. Indeed, "[m]otions to bifurcate Monell claims are now commonplace and [c]ourts in our district have both granted and denied similar motions. Thus, there is a growing body of precedent in this district for both granting and denying bifurcation in § 1983 cases, with the result in each instance reflect[ing] a case-specific assessment of the advantages and disadvantages of bifurcation." Allison v. Gallagher, No. 10 C 6887, 2012 WL 4760863, at *1 (N.D. Ill. Oct. 5, 2012) (internal quotation marks and citations omitted).

The City's motion to supplement cites a recent ruling granting the City's "motion for entry of certification of indemnification" in a substantially similar case involving SOS officers. Minute Order, Aug. 31, 2012, Padilla v. City of Chi., No. 06 C 5462 (N.D. Ill. filed Oct. 6, 2006). The certification in Padilla was offered for the same reasons that the City brings the instant motion, and it involved the same Monell claim. Though not binding authority, the ruling in Padilla is persuasive here.

3

## 2. *Judicial Economy*

The City alleges that interests of judicial economy support bifurcation. Specifically, the City seeks "to avoid potentially unnecessary litigation costs should plaintiffs fail to establish a constitutional violation and thus, as a matter of law, are unable to prove any Monell violation." Def.'s Mot. to Bifurcate 3. While fact discovery on the Monell claim is allegedly complete, rebuttal expert discovery, summary judgment motions, and trial has yet to begin. In opposition, Plaintiffs argue that since the City failed to bring this motion at the start of discovery, any potential savings are already lost, and moving forward with the Monell claim will only add a few extra days to the trial. Plaintiffs further allege that evidence relevant to their Monell claim is also relevant to their other claims in order to prove, among other things, malice, motive, punitive damages, and due process violations. See Pls.' Resp. to the City's Mot. for Bifurcation & "Stipulation" 4-5. Therefore, according to Plaintiffs, staying the Monell claim would not support the interests of judicial economy. The Court disagrees.

"[I]t is well established in this Circuit that a municipality's liability for a constitutional injury 'requires a finding that the individual officer[] [is] liable on the underlying substantive claim.'" Treece, 213 F.3d at 364 (alterations in original) (quoting Tesch v. Cnty. of Green Lake, 157 F.3d 465, 477 (7th Cir. 1998)). Should no constitutional violations be found in the remaining claims, proceeding on the Monell claim would be unnecessary and the extra time and money spent for litigation of that claim would have been for naught. See Allison, 2012 WL 4760863, at *1 ("The spate of bifurcation motions and the willingness of many judges to grant them stems in large part from the recognition that, in many instances, claims of municipal liability require an

4

extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them." (emphasis added) (internal quotation marks and citation omitted)). If, however, it becomes necessary for the parties to pursue litigation of the Monell claim, they can simply proceed accordingly should they choose to do so. Furthermore, a bifurcation and stay of their Monell claim will not prevent Plaintiffs' from introducing evidence that may be relevant to their other claims.

### *3. Undue Prejudice*

Next, the City alleges that the individual Defendant Officers will be prejudiced should the more extensive evidence necessary to try the Monell claim be heard by the jury at trial. Specifically, the City argues that evidence for the Monell claim will introduce "policies or practices" in which the individual Defendant Officers may not have been involved, thus prejudicing the jury. Def.'s Mot. to Bifurcate 5. Plaintiffs continue to allege that much of the evidence for the claims will be the same; "[b]ecause of the unique nature of the SOS corruption, the widespread practices at issue are equally probative to the claims against the individual officers as they are to the Monell claim." Pls.' Resp. to the City's Mot. for Bifurcation & "Stipulation" 1. Plaintiffs further allege that any potential prejudice can be cured through the use of a limiting instruction to the jury. However, the nature of the widespread allegations of corruption involving the City and its SOS Officers is precisely the reason that the individual Defendant Officers may be prejudiced. The jury will already be faced with evidence and allegations against seven named Defendant Officers. Rule 42 specifically allows a court to order bifurcation "to avoid prejudice." Fed. R. Civ. P. 42(b). The possibility of overwhelming the jury and

5

thereby prejudicing those individual Officers by trying the complex Monell claim at the same time is therefore great, and accordingly substantiates the City's request to bifurcate.

In addition, Plaintiffs contend that bifurcating the Monell claim will in fact prejudice them, not Defendants. Plaintiffs appear to be operating under the assumption that bifurcation will eliminate the Monell claim, which they believe to be at the core of their case. Plaintiffs assume incorrectly. See Ojeda-Beltran v. Lucio, No 07 C 6667, 2008 WL 2782815, at *4 (N.D. Ill. July 16, 2008) ("Bifurcation of the Monell claim is not dismissal of the Monell claim."). Rule 42 specifically states that "[w]hen ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). Accordingly, the Court rejects Plaintiffs' argument.

### 4. *No Effect on Potential Compensatory Damages*

Finally, the City argues that, while bifurcation will have no effect upon Plaintiffs' potential recovery of compensatory damages, it will prevent the accrual of attorneys' fees associated with litigating the Monell claim, which may prove to be unnecessary depending on the outcome of the other constitutional claims. The Court interprets this as an additional argument that bifurcation supports the interests of economy in this litigation. See Fed. R. Civ. P. 42(b). The City states that it will be statutorily and contractually bound to indemnify the individual Defendant Officers should any be found liable for violations while acting within the scope of their employment. Through their proposed stipulation, the City further promises to cover potential compensatory damages even if the Defendant Officers successfully assert qualified immunity or lose on the merits through summary judgment or otherwise. See Def.'s Mot. to Bifurcate Ex. B.

Plaintiffs emphatically reject the City's stipulation listing numerous problems and potential loopholes including, *inter alia*, failure to stipulate to an entry of judgment on the Monell claim, failure to stipulate to "collateral estoppel effect of a litigated Monell judgment against the City," and failure to stipulate that the jury will be informed of the stipulation. Pls.' Resp. to the City's Mot. for Bifurcation & "Stipulation" 13-14. Plaintiffs argue that the City's stipulation deprives them of the non-economic benefits and deterrent effect that receiving a judgment against a municipality brings.

The Court rejects Plaintiffs' argument that bifurcation or the stipulation deprives them of any rights with regard to their Monell claim. The stipulation merely secures Plaintiffs receipt of any compensatory damages and entry of judgment against the City should any of the individual Defendant Officers be found liable. See Def.'s Mot. to Bifurcate Ex. B. Moreover, the Supreme Court has recognized that forcing a municipality to pay compensatory damages serves as "a deterrent against future constitutional deprivations," Owen v. City of Independence, 445 U.S. 662, 651 (1980), which Plaintiffs allege is their main concern in bringing this lawsuit. See Pls.' Resp. to the City's Mot. for Bifurcation & "Stipulation" 2 ("[Plaintiffs] seek to hold the tortfeasor whom they believe to be the most culpable—the City of Chicago—liable for its own role in causing their constitutional violations."). Indeed, "the threat that damages might be levied against the city may encourage those in a policymaking position to institute internal rules and programs designed to minimize the likelihood of unintentional infringements on constitutional rights." Owen, 445 U.S. at 652. Accordingly, the Court finds that bifurcation of the Monell claim will streamline this litigation, which serves Rule 42's goals of expedience and economy.

### III. CONCLUSION

The Court finds that the benefits of bifurcation—the promotion of efficiency and economy and the avoidance of undue prejudice—surpass the disadvantages, if any, averred by Plaintiffs. For the foregoing reasons, the City's motion to bifurcate and stay further discovery and trial on the <u>Monell</u> claim is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 2, 2012